1 
2 UNITED STATES DISTRICT COURT 
 DISTRICT OF NEVADA 
3 
4 Modern Eminence, LLC, et al., Case No. 2:24-cv-00348-CDS-EJY 

5 Plaintiffs Order Regarding Pending Motions and 
 Transferring Counts II, III, and IV 
6 v. 

7 Nathan Park, [ECF Nos. 16, 17, 23, 24] 

8 Defendant 

9 
10 Plaintiffs Modern Eminence, LLC, Modern Fortress, Inc., and AllRealms, Inc. are 
11 companies involved in the modular home manufacturing and construction business. Am. compl., 
12 ECF No. 6 at 2–3. In their amended complaint, they allege that after defendant and construction 
13 company owner Nathan Park learned that Modern Fortress and Modern Eminence would not 
14 hire him or his companies, Park embarked on a campaign to scuttle numerous major business 
15 deals organized by the plaintiffs. Id. at 2–5. Pending before the court are defendant’s motion to 
16 dismiss (ECF No. 16), defendant’s motion to stay the deadline for responses to the remaining 
17 claims (ECF No. 17),1 plaintiff’s motion to amend their amended complaint (ECF No. 24), and 
18 plaintiff’s alternative motion to transfer venue (ECF No. 23). 
19 Because this court cannot exercise personal jurisdiction over Modern Fortress or 
20 Modern Eminence—and because there is already related litigation pending before a court that 
21 can—I deny defendant’s partial motion to dismiss without prejudice and grant in part plaintiff’s 
22 request to transfer Counts II, III, and IV to the Federal District Court for the Northern District 
23 of Texas, Dallas Division. I further grant defendant’s request stay the deadline to respond to the 
24 dismissal motion on Counts I and V. 
25 

26 
 1 ECF Nos. 16 and 17 are identical in content, but ECF No. 16 is filed as the motion to dismiss and ECF 
 No. 17 is filed as the motion to stay. 
1 I. Background 
2 This controversy arises out of an ongoing dispute between plaintiffs Modern Eminence, 
3 Modern Fortress, and AllRealms, Inc., and Defendant Park. In their complaint, plaintiffs allege 
4 that Park signed a “Convertible Promissory Note” with AllRealms agreeing that he would “keep 
5 confidential and [would] not disclose, divulge, or use for any purpose (other than to monitor 
6 [his] investment in [AllRealms]) any confidential information obtained from [AllRealms] other 
7 than disclosure to [Defendant’s] attorneys, accountants, consultants, and other similar 
8 professionals, to the extent necessary to obtain their services in connection with monitoring 
9 [Defendant’s] investment in [AllRealms].” ECF No. 6 at 2. AllRealms is a Utah corporation, but 
10 the Note explicitly “calls for the application of Nevada law and for venue in either Nevada state 
11 court or federal court.” Id. at 1–2. Related are Modern Eminence, a Nevada limited liability 
12 company (LLC), and Modern Fortress, a Utah corporation owned by Modern Eminence. Id. 
13 According to plaintiffs’ complaint, after executing the Note with AllRealms, Park sought 
14 to contract his construction business with Modern Eminence and Modern Fortress. Id. at 3. 
15 When the companies rebuffed him, they allege that he took steps to damage multiple business 
16 deals Modern Eminence and Modern Fortress were attempting to reach with others. Id. at 3–4. 
17 Plaintiffs filed this action against Park for (I) breach of contract for an alleged breach of the 
18 Note; (II) tortious interference with contractual relations involving a deal to which Modern 
19 Fortress was a party; (III) wrongful interference with prospective economic advantage involving 
20 a deal to which Modern Fortress was a party; (IV) wrongful interference with prospective 
21 economic advantage involving a deal to which Modern Eminence was a party; and (V) breach of 
22 implied covenant of good faith and fair dealing as an alternative to Count I. Id. at 5–7. 
23 In his motion to dismiss, Park argues that plaintiffs fail to establish that this court 
24 possesses personal jurisdiction over the claims involving Modern Eminence and Modern 
25 Fortress (Claims II, III, and IV). ECF No. 16 at 5–6. Park also notes that he currently has a 
26 lawsuit that predates this one pending against plaintiffs for fraud and conspiracy to commit 
1 fraud, initially filed in Texas state court but since removed to the United States District Court 
2 for the Northern District of Texas, Dallas Division. Id. at 2–3.2 
3 In two successive filings, plaintiffs argue that they have established personal jurisdiction 
4 but also seek leave to amend their complaint once again and, in the alternative, move to transfer 
5 Counts II and IV to the United States District Court for the Northern District of Texas, Dallas 
6 Division, and Count III to the United States District Court for the Western District of Texas, 
7 Waco Division. ECF No. 23 at 8–13; ECF No. 24 at 1–2. 
8 II. Discussion 
9 A. This court lacks the personal jurisdiction to adjudicate plaintiffs’ claims. 
10 
11 “Personal jurisdiction must exist for each claim asserted against a defendant.” Action 
12 Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004) (citing Data Disc., Inc. v. 
13 Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1289 n.8 (9th Cir. 1977)). “When a defendant moves to dismiss 
14 for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court 
15 has jurisdiction.” Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Natural Gas Antitrust Litig.), 715 
16 F.3d 716, 741 (9th Cir. 2013) aff’d sub nom. Oneok, Inc. v. Learjet, Inc., 575 U.S. 373 (2015). However, to 
17 carry this burden, a plaintiff need only make “a prima facie showing of jurisdictional facts.” 
18 Menken v. Emm, 503 F.3d 1050, 1056 (9th Cir. 2007). When conflicts exist between the statements 
19 made in the affidavits submitted by each party, courts resolve these conflicts in the plaintiff’s 
20 favor. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004) (“The court 
21 resolves all disputed facts in favor of the plaintiff.”). 
22 
23 
24 

25 2 As of the filing of the motion to dismiss, there was a pending motion to dismiss and motion to transfer 
 venue to the District of Nevada. ECF No. 17 at 2–3. Neither party has provided this court an update on 
26 these proceedings and no transfer has been initiated as of the filing of this order. Therefore, I will assume 
 that these motions remain pending. 
1 Where, as in this case, “no federal statute authorizes personal jurisdiction, the district 
2 court applies the law of the state in which the court sits.” Mavrix Photo, Inc. v. Brand Techs., Inc., 647 
3 F.3d 1218, 1223 (9th Cir. 2011) (citations omitted). Nevada’s long-arm statute, set forth at NRS 
4 14.065, coincides with federal due process requirements. Those requirements mandate that 
5 nonresident defendants have “minimum contacts” with Nevada “such that the maintenance of 
6 the suit does not offend traditional notions of fair play and substantial justice.” Int’l Shoe Co. v. 
7 Washington, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). “[T]he 
8 defendant’s conduct and connection with the forum [s]tate [must be] such that he should 
9 reasonably anticipate being haled into court there.” World-Wide Volkswagen Corp. v. Woodson, 444 
10 U.S. 286, 297 (1980). Personal jurisdiction can be either “general” or “specific.” See Helicopteros 
11 Nacionales de Colombia v. Hall, 466 U.S. 408, 415–16 (1984). On a prima facie showing, the court 
12 resolves all contested facts in favor of the non-moving party. Oneok, 715 F.3d at 741; AT&T v. 
13 Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996) (if conflicted facts are contained in 
14 the parties’ affidavits, the facts must be resolved in favor of the plaintiff for purposes of 
15 determining whether a prima facie case of personal jurisdiction has been established). 
16 Nonetheless, a plaintiff may not simply rest on the “bare allegations of [the] complaint.” 
17 Id. (quoting Amba Mktg. Sys., Inc. v. Jobar Int’l, Inc., 551 F.2d 784, 787 (9th Cir. 1977)). If the defendant 
18 presents evidence to contradict the allegations in the complaint, the plaintiff must go beyond 
19 the pleadings and present affirmative proof of personal jurisdiction through affidavits and/or 
20 declarations. See AT&T, 94 F.3d at 588; accord Caruth v. Int’l Psychoanalytical Ass’n, 59 F.3d 126, 127–
21 28 (9th Cir. 1995) (absent an evidentiary hearing, this court “only inquire[s] into whether [the 
22 plaintiff’s] pleadings and affidavits make a prima facie showing of personal jurisdiction.”). 
23 
24 The only allegations tethered to Nevada in plaintiff’s amended complaint are (1) the 
25 forum selection clause in the note signed between defendant and AllRealms and (2) the 
26 assertion that Modern Eminence is a Nevada LLC. ECF No. 6 at 1, 2. Park resides in Texas. 
1 Id. at 1. Modern Fortress is a Utah corporation. Id. Plaintiffs reference several business deals that 
2 Park allegedly thwarted, all either in Texas or lacking a specified location. Id. at 3–4. The parties 
3 agree that plaintiffs have not established general jurisdiction over Park in Nevada—plaintiffs do 
4 not challenge Park’s assertion that no general jurisdiction exists. ECF No. 16 at 6; ECF No. 23 at 
5 5 (“Plaintiffs concede this Court does not have general personal jurisdiction over Defendant.”). 
6 So I turn to specific jurisdiction. 
7 Specific jurisdiction “focuses on the relationship among the defendant, the forum, and 
8 the litigation.” Calder v. Jones, 465 U.S. 783, 788 (1984) (internal quotation marks and citation 
9 omitted). In the Ninth Circuit, a three-part test is applied to determine whether the exercise of 
10 specific jurisdiction over a nonresident defendant is appropriate. Schwarzenegger, 374 F.3d at 802 
11 (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). First, the nonresident defendant must 
12 purposefully direct his activities or complete some transaction with the forum or resident 
13 thereof; or perform some act by which he purposefully avails himself of the privilege of 
14 conducting activities in the forum, thereby invoking the benefits and protections of its laws. Id. 
15 Second, the claim must be one which arises out of or relates to the defendant’s forum-related 
16 activities. Id. Finally, the exercise of jurisdiction must comport with fair play and substantial 
17 justice, i.e., it must be reasonable. Id. The first prong of the specific jurisdiction test refers to 
18 both purposeful availment and purposeful direction. CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 
19 1066, 1076 (9th Cir. 2011). 
20 Plaintiffs acknowledge that Modern Eminence’s sole member is AllRealms, but the 
21 forum selection clause in the note signed between AllRealms and Park alone is not sufficient to 
22 establish this court’s personal jurisdiction over Modern Eminence. In cases involving related 
23 business entities, “a parent-subsidiary relationship is insufficient, on its own, to justify imputing 
24 one entity's contacts with a forum state to another for the purpose of establishing personal 
25 jurisdiction.” Ranza v. Nike, Inc., 793 F.3d 1059, 1070 (9th Cir. 2015). In fact, the Ninth Circuit 
26 
1 holds that “corporate separateness insulates a parent corporation from liability created by its 
2 subsidiary.” Id. 
3 Therefore, the remaining allegation intimating that Park had contact with Nevada is that 
4 Modern Eminence is a Nevada LLC. An LLC “is a citizen of every state of which its 
5 owners/members are citizens.” Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 
6 2006). But this does not demonstrate Park had contact with Nevada: “[t]o have purposefully 
7 availed [him]self of the privilege of doing business in the forum, [Park] must have ‘performed 
8 some type of affirmative conduct which allows or promotes the transaction of business within 
9 the forum state.’” Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008) (citation omitted). And 
10 the amended complaint does not attest to the citizenship of any of the members or owners of 
11 Modern Eminence. When evaluating its jurisdiction, a court may consider facts outside of the 
12 four-corners of the complaint to assure itself that it does, in fact, have the power to hear this 
13 matter. Americopters, LLC v. FAA, 441 F.3d 726, 732 n.4 (9th Cir. 2006). However, no additional 
14 evidence has been proffered here on which I could surmise that Park had any, even remote, 
15 contact with Nevada. Because plaintiffs cannot establish that this court has personal 
16 jurisdiction over the Modern Eminence claims, there is no need here to analyze whether this 
17 court has pendent jurisdiction over the claims related to Modern Fortress. See Maadanian v. 
18 Mercedes-Benz USA, LLC, 2023 U.S. Dist. LEXIS 79103, at *10–11 (W.D. Wash. May 5, 2023) (citing 
19 Action Embroidery, 368 F.3d at 1180 (citing U.S. v. Botefuhr, 309 F.3d 1263, 1272–75 (10th Cir. 2002) 
20 (requiring that the court have personal jurisdiction over a claim in an action before exercising 
21 pendent jurisdiction))). Therefore, the amended complaint fails to establish that this court has 
22 personal jurisdiction over plaintiffs’ Claims II, III, and IV. 
23 

24 
25 Plaintiffs seek leave of court to amend their complaint a second time. ECF No. 24. They 
26 argue that this amendment would “add additional detail to their factual allegations that will 
1 better inform the Court and Defendant about the nature of the disputes, . . . better establish the 
2 Court’s ability to exercise personal jurisdiction over all of Plaintiffs’ claims, and [they seek] to 
3 revise Count II of their Amended Complaint.” Id. at 4. 
4 Under Rule 15(a), “court[s] should freely give leave [to amend a complaint] when justice 
5 so requires.” Fed. R. Civ. P. 15(a). “Several factors govern the propriety of a motion to amend: (1) 
6 undue delay, (2) bad faith, (3) prejudice to the opponent, and (4) futility of amendment.” 
7 Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 766 (9th Cir. 1986) (citation omitted). 
8 However, a court need not grant leave to amend when permitting a plaintiff to amend would be 
9 an exercise in futility. See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir. 
10 1987) (“Denial of leave to amend is not an abuse of discretion where the pleadings before the 
11 court demonstrate that further amendment would be futile.”). 
12 Here, granting plaintiffs leave to amend their complaint again, which they attach to their 
13 motion (ECF No. 24-1), would be an exercise in futility—the amendments do not adequately 
14 establish how Park’s alleged conduct touched Nevada nor demonstrated the required “minimum 
15 contacts” with this state. They merely allege in greater detail that Park emailed “multiple 
16 uncomfortable questions” to Kristina Brown, a Modern Eminence employee, that ultimately led 
17 to a grant funding application being denied. ECF No 24-1 at 7. At no point do they establish 
18 where Kristina Brown lives or where she was when she received those alleged emails. The fact 
19 she was an employee of Modern Eminence, a Nevada LLC, is not enough for me to find that Park 
20 made minimum contacts with Nevada, especially because plaintiffs in their proposed second 
21 amended complaint still do not acknowledge the citizenship of any of the members or owners of 
22 Modern Eminence. Plaintiffs also allege that Park caused a woodworking machinery company 
23 under contract with Modern Fortress to “refuse to fulfill its contract[.]” Id. “The loss of this 
24 manufacturer has cost Modern Fortress at least $1 million and set back its business operations 
25 in Texas, Nevada, Idaho, and Nebraska by at least 4 months[,]” which they allege caused harm to 
26 Nevada because “Modern Fortress would have been able to construct a [Structural Insulated 
1 Panel (SIP)] manufacturing plant in Mesquite, Nevada if not for Defendant’s interference[.]” Id. 
2 at 8. However, this mere speculation is not enough to establish minimum contacts with the 
3 forum state. See, e.g., Hampton/SHL Inv. Co. v. Arnold Indus., Inc., 1999 WL 61422, at *5 (N.D. Tex. Jan. 
4 27, 1999) (“[M]ere contractual negotiations and attendant correspondence with a forum plaintiff 
5 are not minimum contacts necessary for personal jurisdiction.”); New Lenox Indus., Inc. v. Fenton, 510 
6 F. Supp. 2d 893, 902 (M.D. Fla. 2007) (“[M]erely discussing a discrete offer for employment is 
7 not sufficient to establish that Fenton was conducting a general course of business in Florida.”). 
8 Here, plaintiffs do not even allege that plans were discussed to construct an SIP in Nevada, only 
9 that they “would have been able” to build one. ECF No. 24-1 at 8 (emphasis added). If this were 
10 sufficient minimum contacts, then any future claimant seeking relief under a breach of 
11 contract—or certain torts—could establish minimum contacts with Nevada by stating that they 
12 “would have been able to” spend the money in Nevada. This is far afield from the “minimum 
13 contacts” contemplated by International Shoe. I find that, even with the details plaintiffs 
14 ostensibly provide in their proposed second amended complaint, they fail to establish that this 
15 court has personal jurisdiction over the claims. The proposed amendment is therefore futile, so I 
16 deny plaintiffs’ motion to amend. 
17 B. Venue transfer is appropriate. 
18 The transfer of civil actions among federal courts to cure jurisdictional defects is 
19 governed by 28 U.S.C. § 1631. Cruz-Aguilera v. I.N.S., 245 F.3d 1070, 1074 (9th Cir. 2001). Transfer is 
20 appropriate under § 1631 if three conditions are met: (1) the transferring court lacks jurisdiction; 
21 (2) the transferee court could have exercised jurisdiction at the time the action was filed; and (3) 
22 the transfer is in the interest of justice. See Kolek v. Engen, 869 F.2d 1281, 1284 (9th Cir. 1989). 
23 “Normally transfer will be in the interest of justice because normally dismissal of an action that 
24 could be brought elsewhere is ‘time consuming and justice-defeating.’” Miller v. Hambrick, 905 
25 F.2d 259, 262 (9th Cir. 1990) (quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962)). When 
26 evaluating if transfer is in the interest of justice, courts have considered whether the failure to 
1 transfer would prejudice the litigant and whether the litigant filed the original action in good 
2 faith, among other equitable factors. See Liriano v. United States, 95 F.3d 119, 122 (2d Cir. 1996) 
3 (weighing the litigant’s good faith where new habeas statute imposed new procedural 
4 requirements and concluding transfer warranted); Janicki Logging Co. v. Mateer, 42 F.3d 561, 567 
5 (9th Cir. 1994) (finding that the bad faith actions of the litigant militated against transfer); 
6 Kolek, 869 F.2d at 1284 (finding transfer in the interest of justice because litigant was pro se, was 
7 not fluent in English, and had limited access to legal research materials in prison). 
8 Plaintiffs, in their response to the motion to dismiss, move that this court, absent 
9 jurisdiction, transfer this case.3 ECF No. 23 at 11–12. Specifically, they seek to have Counts II and 
10 IV transferred to the United States District Court for the Northern District of Texas, Dallas 
11 Division and Count III transferred to the United States District Court for the Western District 
12 of Texas, Waco Division. Id. at 12. Based on Park’s representations, which the plaintiffs do not 
13 refute, there is a related case involving these parties already pending in the United States 
14 District Court for the Northern District of Texas, Dallas Division after its removal from Texas 
15 state court. See ECF No. 16 at 2. Given that there appears to be ongoing litigation involving these 
16 parties and, though little information is provided, it appears to also involve similar aspects of the 
17 relationship between the parties, these claims could have been filed as counterclaims by the 
18 plaintiffs—who are the defendants in the Texas lawsuit. Further, it is undisputed that Park is a 
19 resident of Texas, so the Texas court would have general personal jurisdiction over him. See 
20 Daimler AG v. Bauman, 571 U.S. 117, 118 (2014) (“For an individual, the paradigm forum for the 
21 exercise of general jurisdiction is the individual’s domicile . . . .” (citing Goodyear Dunlop Tires 
22 Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011))). 
23 
24 

25 3 Plaintiffs cite 28 U.S.C. § 1404(a) which is the transfer statute that addresses “convenience of the 
 parties and witnesses[.]” Here, the appropriate transfer statute is 28 U.S.C. § 1631 as this would be 
26 transfer to cure want of jurisdiction. Thus, I construe plaintiffs’ response and motion to be discussing 28 
 U.S.C. § 1631 transfer. 
1 Although plaintiffs request that Count III be transferred to the United States District 
2 Court for the Western District of Texas, they do not explain why this claim cannot be resolved 
3 in the same court as the others. Having already found that this court does not have jurisdiction 
4 and the Northern District of Texas does, I must evaluate whether transfer is in the interests of 
5 justice. This court has not been presented with proof that plaintiffs’ claims were made in bad 
6 faith, and the alternative to transfer—dismissal, even if done without prejudice—could 
7 ultimately prejudice the plaintiffs, who would have to go through the time and expense of 
8 refiling this case in another district. Thus, in the interests of justice, I transfer Counts II, III, and 
9 IV to the United States District Court for the Northern District of Texas, Dallas Division. To the 
10 extent plaintiffs believe Count III should be in the Western District of Texas, they should seek 
11 relief out of the Northern District of Texas. 
12 C. The deadline for Park to respond to Counts I and V is retroactively stayed. 
13 A defendant is not required to file a responsive pleading on unchallenged claims until 
14 fourteen days after the court has rendered its decision on the motion. Fed. R. Civ. P. 12(a)(4)(A). 
15 Therefore, Park has until December 23, 2024, to provide responsive briefing on Counts I and V. 
16 III. Conclusion 
17 IT IS HEREBY ORDERED that defendant’s partial motion to dismiss [ECF No. 16] is 
18 DENIED without prejudice. 
19 IT IS FURTHER ORDERED that defendant’s motion to stay deadline to respond to 
20 remaining claims [ECF No. 17] is GRANTED. 
21 IT IS FURTHER ORDERED that plaintiffs’ motion for leave to amend their complaint 
22 [ECF No. 24] is DENIED. 
23 IT IS FURTHER ORDERED that plaintiffs’ motion to transfer venue [ECF No. 23] is 
24 GRANTED in part and DENIED in part. 
25 
26 
 1 The Clerk of Court is directed to TRANSFER COUNTS II, III, and IV of this case to 
2||the Northern District of Texas, Dallas Division and to terminate in this district plaintiffs 
 31] Modern Fortress, Inc. and Modern Eminence, LLC. 
4 Dated: December 6, 2024 J, 
 Vy 
 6 athe —— 
 Unisuates District Judge 
 8 
 9 
10 
ll 
12 
13 
4 
15 
16 
17 
18 
19 
20 
21 
22 
23 
24 
25 
26 

 ll